UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

REIMA A. RABIONET,
individually and on behalf of all
others similarly situated,                                          **CLASS ACTION**

      Plaintiff,                                               **JURY TRIAL DEMANDED**

v.

MANAGED CARE OF NORTH
AMERICA, INC., d/b/a MCNA
DENTAL PLANS, INC.,
a Florida corporation,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Reima A. Rabionet, brings this class action against Defendant, Managed Care of North America, Inc. d/b/a MCNA Dental Plans, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      This putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), stems from Defendant's practice of sending unsolicited automated telemarketing text messages.

2.      In order to drum up new business, Defendant sent Plaintiff and others telemarketing text messages encouraging them to visit Defendant's website, where Defendant promotes its dental benefits services.

3.      Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide. Plaintiff also seeks statutory damages

13913-001/00864359_1

on behalf of herself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

4.        Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant.  Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5.        Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

6.        Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of Florida.

7.        Defendant is a Florida Corporation whose principal office is located at 200 West Cypress Creek Road, Suite 500, Fort Lauderdale, Florida 33309.   Defendant directs, markets, and

provides its business activities throughout the United Stated, including the State of Florida.

## THE TCPA

8.      The TCPA regulates and restricts the use of automatic telephone equipment.

9.      The TCPA protects consumers from unwanted text messages that are made with autodialers.

10.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.     In 2012, the FCC issued an order tightening the restrictions for automated

telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See*

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R.

1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

15.         To obtain express written consent for telemarketing calls, a defendant must

establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and

conspicuous disclosure' of the consequences of providing the requested consent….and having received

this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff]

designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R.

1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16.         The TCPA regulations promulgated by the FCC define "telemarketing" as "the

initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or

investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a

communication constitutes telemarketing, a court must evaluate the ultimate purpose of the

communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17.         "Neither the TCPA nor its implementing regulations 'require an explicit mention

of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"

*Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18.         "'Telemarketing' occurs when the context of a call indicates that it was initiated

and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d

at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003

WL 21517853, at *49).

19.         The FCC has explained that calls motivated in part by the intent to sell property,

goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

20.      In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21.      If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22.      Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (the FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the ***text message***) (emphasis added).

23.      A violation of the statutorily-protected substantive right created by the TCPA "causes 'real' harm, as opposed to harm that is 'hypothetical' or 'uncertain.'" *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 2:15-cv-793-FtM-29MRM, 2016 U.S. Dist. LEXIS 160869, *8 (M.D. Fla. Nov. 21, 2016) (citing *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 & n.3 (11th Cir. July 6, 2016) (not receiving information to which one is statutorily entitled is a "concrete" injury)); *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, 2016 WL

4017196, at *4 (S.D. Fla. July 26, 2016) (plaintiff whose sales receipt showed more than last five credit-card digits alleged a concrete harm under the Fair and Accurate Credit Transactions Act (FACTA) since, "in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts," not merely a "procedural requirement for credit card-using companies to follow")).

24.     Indeed, individuals, including Plaintiff and members of the Class, who receive text messages in violation of the TCPA suffer concrete injuries analogous to common law torts such as invasion of privacy, intrusion on seclusion, trespass to chattels and conversion.  *See Palm Beach Golf Center v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250–51 (11th Cir. 2015) (owner of facsimile machine has Article III standing to sue where he loses use of that machine); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance"); *Bagg v. Ushealth Group, Inc.*, Case No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016) ("'Courts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion,' and recognize that the sending of an unsolicited fax constitutes an invasion of privacy.") (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006)); *Jamison v. Esurance Insurance Services, Inc.*, Case No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) ("From this, the Court concludes that an individual suffers an injury in fact from unauthorized telephone contact when it causes an incurrence of charges, a reduction in usable minutes, or occupation of the telephone line, making it unavailable for other use."); *Johnson v. Navient Solutions, Inc.*, Case No. 1:15-cv-00716-LJM-MJD, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015) ("Based on the allegations in the Complaint and the TCPA's protection of Johnson's privacy rights, the Court concludes that Johnson has stated a claim for actual harm, upon which he may rely to provide standing.") (citing *Schumacher v. Credit Protection Ass'n*, Cause No. 4:13–cv–00164–SEB–DML, 2015 WL 5786139, at

*5 (S.D. In. Sept. 30, 2015) ("Here, [plaintiff's] TCPA-created right to privacy was invaded by repeated automated calls from CPA."); *Weisberg v. Kensington Professional and Associates, LLC*, Case No. 15-cv-08532, 2016 WL 1948785, at *3 (C.D. Cal. May 3, 2016) ("The invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money — financial harm — are not speculative future injuries or injuries based on the violation of rights provided in a statute. Thus...Plaintiff does allege actual monetary damages."); *Lathrop v. Uber Technologies, Inc.*, Case No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ("Plaintiffs allege they and members of the class 'suffered damages in the form of text message, data, and other charges to their cellular telephone plans.' Id. ¶ 116. Based on the allegations in the Second Amended Complaint, the Court concludes that Plaintiffs have sufficiently stated an injury in fact."); *Fini v. Dish Network, L.L.C.*, 955 F.Supp.2d 1288, 1296–97 (M.D. Fla. 2013) (plaintiff has standing to sue where she lost use of cellular service for which she previously had paid).

## FACTS

25.       Defendant is a dental benefits provider and administrator.

26.       Defendant's dental benefits business includes dental plans for individuals, private employers, and families.

27.       Defendant also operates as a dental benefits administrator that provides Medicaid, Medicare, long term care, and children's health insurance plans and programs to state agencies and managed care organizations.

28.       Defendant provides services to approximately 4 million children and adults throughout the United States.

29.       Faced with increased competition from other dental benefits providers, including Delta Dental Plans Association, which provides dental benefits to Plaintiff, Defendant launched a telemarketing text campaign to drive individuals to its website, where Defendant markets its dental

benefits services.

       30.       One such unsolicited telemarketing text was sent to Plaintiff, who has never had any type of relationship with Defendant.

       31.       Specifically, on November 25, 2016, Defendant caused the following automated text message to be sent to Plaintiff's cellular telephone number ending in 5940 (the "5940 Number"):



       32.       Because Plaintiff does not receive and has never received dental benefits from MCNA, the text message Plaintiff received from MCNA on November 25, 2016, was intended to Market MCNA's services by directing Plaintiff to Defendant's website, which advertises Defendant's dental plans and other related services:



33.        The telephone number identified in the text message (1-800-281-9724) belongs and

is operated by Defendant.

34.        Plaintiff received the subject text within this judicial district and, therefore,

Defendant's violation of the TCPA occurred within this district.   Upon information and belief,

Defendant caused other text messages to be sent to individuals residing within this judicial district.

35.        Plaintiff never provided her telephone number to Defendant.

36.        At no point in time did Plaintiff provide Defendant with her consent to be contacted

using an ATDS.

37.        Plaintiff is the subscriber and sole user of the 5940 Number, and is financially

responsible for phone service to the 5940 Number.

38.        The impersonal and generic nature of Defendant's text message demonstrates that

Defendant utilized an ATDS in transmitting the message.

39.    Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text message at issue in this case.  The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

40.    Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text message also inconvenienced Plaintiff and caused disruption to his daily life.  *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

41.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

42.    Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call or text message made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, not for emergency purposes and without the recipient's prior express consent.**

43.    Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

44.         Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45.         The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

46.         There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant is liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

47.         The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

TYPICALITY

48.      Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

PROTECTING THE INTERESTS OF THE CLASS MEMBERS

49.      Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

50.      A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

31.      Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

32.      It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

33.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at \*4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

34.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

35.     These calls were made without regard to whether or not Defendant had first obtained consent from the called party to make such calls. In fact, Defendant did not have consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

36.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their consent.

37.     Defendant knew or should have known that it did not have consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

38.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

39.     Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its autodialed calls

to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff, Reima A. Rabionet, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendant from using an automatic telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and all Class Members hereby demand a trial by jury.

Date: January 24, 2017

Respectfully submitted,

*/s/Scott A. Edelsberg*_____
Jeff M. Ostrow (Florida Bar No. 121452)
Scott A. Edelsberg (Florida Bar No. 100537)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
edelsberg@kolawyers.com

Avi R. Kaufman (Florida Bar No. 84382)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
2800 Ponce de Leon Boulevard, Suite 1100
Coral Gables, Florida 33134
Telephone: 305-384-72562
kaufman@kolawyers.com

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713